**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Armored Group, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>Supreme Corporation, a Texas corporation; and Supreme Corporation of Texas, a Texas corporation,<br><br>Defendants. | No. CV 09-414-PHX-NVW<br><br>**ORDER** |

Defendant Supreme Corporation and Supreme Corporation of Texas move to dismiss Plaintiff The Armored Group, LLC's ("Armored Group") First Amended Complaint under Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(6), and 9(b). (Doc. #37.) In the alternative, they move to transfer the case to a more convenient forum under 28 U.S.C. § 1404(a).

**I. Background**

Armored Group markets and sells armored trucks, armored SUVs, armored vans, cash in transit vehicles, mobile check cashing and mobile ATM vehicles. At all times relevant to the allegations in the amended complaint, it was headquartered and had its principal place of business in Phoenix, Arizona. Armored Group alleges that from 2004 to 2006 it contracted with Robert Wilson, President of Supreme Corporation, to be the exclusive sales representative for all armored vehicle products sold by it or its sister

company, Supreme Corporation of Texas. During the life of that written contract, Armored Group frequently communicated with both Supreme Corporation and Supreme Corporation of Texas from its Phoenix office. Armored Group alleges that upon expiration of the written agreement it entered into an oral agreement with both companies to continue performing their sales and marketing on a nonexclusive basis. Defendants orally agreed to pay Armored group a 10% commission on (1) the gross sales price of all armored vehicles sales brought to Defendants, and (2) the gross sales price of all armored vehicle products sold to customers under any vendor contract that resulted from Armored Group's past and future work efforts. Robert Wilson and James Bandy, Vice President of Supreme Corporation of Texas, agreed to these terms in telephone conversations with Armored Group's CEO, Robert Pazderka, on or about December 31, 2006.

Thereafter, Armored Group alleges that it continued to maintain office space and business cards at Supreme Corporation of Texas's facility and that Defendants in fact payed the agreed upon 10% commissions on new sales. Armored Group also continued working to secure a lucrative vendor contract with the U.S. State Department for Defendants, which it had begun pursuing while the original written agreement was in effect. On or about June 2007, Defendants learned that they were going to be awarded the vendor contract. Before the contract was officially awarded, Robert Wilson allegedly terminated the oral agreement with Armored Group to avoid paying it commissions for securing the vendor contract. Supreme Corporation of Texas has since sold at least $500,000 worth of armored vehicle products under the vendor contract. Armored Group alleges that Defendants never intended to pay the agreed upon commission for the vendor contract, but orally agreed to do so to induce Armored Group to continue working to close the deal. Additionally, the amended complaint alleges that, in an effort to damage Armored Group, Defendants have contacted at least one of Armored Group's customers and induced it to terminate a purchase order. Based upon all of these allegations, the amended complaint asserts that Defendants breached the oral agreement, committed

fraud, have been unjustly enriched, and have tortiously interfered with Armored Group's business relationships.

## II. Personal Jurisdiction and Venue

The Court dismissed Armored Group's original complaint because it had not clearly alleged, much less provided any evidence, that an agent of the Defendants participated in the alleged oral agreement. It therefore could not rely on that agreement to establish specific jurisdiction over Defendants. "A court may exercise specific jurisdiction where the suit 'arises out of' or is related to the defendant's contacts with the forum and the defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Only Supreme Corporation of Texas now asserts that the Court lacks personal jurisdiction.

The amended complaint corrects all of the deficiencies noted in the Court's previous order. It clearly alleges that James Bandy entered into the oral agreement on behalf of Supreme Corporation of Texas in telephone conversations with Armored Group's CEO, Robert Pazderka, on or about December 31, 2006. Furthermore, the amended complaint alleges that Armored Group served as the exclusive sales representative for Supreme Corporation of Texas from 2004 to 2006. Armored Group was headquartered and maintained its principle place of business in Phoenix, Arizona at all relevant times and frequently communicated with Supreme Corporation of Texas from that location. Supreme Corporation of Texas therefore knew that it was affiliating with a business operating out of Arizona and that its agreement would create continuing contacts with Arizona that could result in being haled into court here. The allegations in the amended complaint arise out of or are related to Armored Group's performance of sales activities pursuant to its contractual relationship with Supreme Corporation of Texas. Consequently, this Court has specific jurisdiction over Supreme Corporation of Texas. *See*, *e.g.*, *Burger King*, 471 U.S. at 473 ("[P]arties who reach out beyond one state and

create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.").

Defendants reply that Armored Group has not supplied prima facie evidence in support of the existence of personal jurisdiction over Supreme Corporation of Texas. In context of a motion to dismiss for lack of personal jurisdiction, "[a]lthough the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007) (citations omitted). Defendants did not specifically controvert the aforementioned factual allegations, so Armored Group had no obligation to supply extrinsic evidence to bolster its complaint. Apparently "in for a penny, in for a pound," Defendants also stretch their prima facie evidence argument to their motion to dismiss. The standard on such a motion should be familiar; the Court must accept all well-pleaded facts as true and may only dismiss the complaint if the complaint does not allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Prima facie evidence of liability is not required at the pleadings stage.

Defendants also assert that venue is not proper in Arizona because the written agreement that governed the parties' business relationship from 2004 to 2006 specified that Indiana would be the forum for all legal disputes. However, Armored Group has not sued for breach of the written agreement. It has sued for breach of the oral agreement that the parties concluded after the terms of the written agreement expired. Defendants have provided no evidence that the oral agreement specified the forum for any future legal disputes. According to the uncontradicted allegations of the amended complaint, no forum selection clause applies to this dispute.

Defendants also move to transfer venue under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison*

*Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "As part of this inquiry, the court should consider private and public interest factors affecting the convenience of the forum." *Id.* (detailing the private and public interest factors to be considered).

Regarding private factors, Defendants' motion simply points out that it would be more convenient to litigate where their employees and files are located, in either Indiana or Texas. Alternatively, they suggest that Washington, D.C., would be more convenient because State Department witnesses may be necessary. Defendants provide only vague generalizations about the witnesses that will be required, which is insufficient to meet their burden on this issue. *See, e.g.*, *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007) ("The movant is obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included."); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3581, at 227–28 (3d. ed. 2007) ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum . . . the application for transferring the case should be denied."). Moreover, even if venue was transferred to one of the states that Defendants propose, witnesses and documents from the other states, including Arizona, would then be inconvenienced. The location of witnesses and documents therefore does not weigh in favor of transfer.

Defendants note only one public factor favoring transfer; namely, that Supreme Corporation has filed suit against Armored Group in Indiana alleging breach of the written agreement. They therefore argue that this case should be transferred to Indiana in the interests of judicial economy. The Indiana suit involves a different dispute. Moreover, even if it addressed the same claim, Supreme Corporation filed the Indiana suit only after Armored Group had filed suit in Maricopa County Superior Court. Under the first-to-file rule, this Court has priority. *See Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) ("[W]hen cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.").

Defendants have provided no reason that the first-to-file rule should be disregarded in this case. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) ("The circumstances under which an exception to the first-to-file rule typically will be made include bad faith . . . anticipatory suit, and forum shopping." (citations omitted)).

In light of the factors outlined in *Decker*, neither the convenience of the parties and witnesses nor the interests of justice require transfer of this case to Washington, D.C., Indiana, or Texas.

### III. Motion to Dismiss Claims

#### A. Breach of Contract

Defendants move to dismiss Armored Group's breach of contract claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). They assert that the amended complaint does not specify the circumstances surrounding the formation of the alleged oral agreement in enough detail. They also assert that the amended complaint does not allege that each individual defendant was a party to the oral agreement. "[T]o state a claim in contract, the complaint must disclose an agreement, a right thereunder in the party seeking relief and a breach by the defendant." *City of Tucson v. Super. Ct.*, 116 Ariz 322, 324, 569 P.2d 264, 266 (Ct. App. 1977). The facts outlined above amply meet this standard. Defendants provide no legal authority that more detail is needed to successfully plead this breach of contract claim. They also completely ignore the amended complaint's specific allegation that officers of both Defendants were parties to the oral agreement. Defendants' legally unsupported and factually disingenuous arguments merit little attention.

#### B. Fraud

Regarding Armored Group's fraud claim, the amended complaint plainly states "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Misc. Serv. Workers, Drivers, & Helpers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981). Defendants arguments to the contrary strain credulity. For example, Defendants argue that the amended complaint

- 6 -

does "not assert that Mr. Wilson fraudulently misrepresented any fact in . . . entering the alleged oral contract." (Doc. # 37 at 10). Paragraphs 62 and 63 of the amended complaint allege that at the time Mr. Wilson (and Mr. Bandy) orally agreed to pay a 10% commission on any vendor contract secured by Armored Group, he had no intention of actually doing so. (Doc. # 27.) Even more boldly, Defendants assert that the amended complaint "also fails to plead that Plaintiff relied on any misrepresentation of fact, that any such reliance was reasonable, and that Plaintiff was damaged in material respect." (Doc. # 37 at 10.) To quote the amended complaint, "Armored Group reasonably relied on Defendants' false representations," (doc. # 27 ¶ 65); "Defendants made each misrepresentation . . . with knowledge that the misrepresentations and omissions were false, with the intent that Armored Group would rely on such misrepresentations and omissions," (*id.* ¶ 66); "Armored Group was unaware of the falsity of Defendants' representations and/or omissions," (*id.* ¶ 67); and "As a result of Armored Group's reliance upon the misrepresentations and omissions alleged herein, Armored Group has been damaged by the loss of its anticipated commissions . . . ," (*id.* ¶ 68). Defendants' apparent ignorance of the allegations in the amended complaint is sincerely troubling.

### C. Tortious Interference With Contract

To state a claim for tortious interference with contract, a plaintiff must show 1) the existence of a valid contractual relationship or business expectancy; 2) the interferer's knowledge of the relationship of expectancy; 3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resulting damage to the party whose relationship or expectancy has been disrupted. *Miller v. Hehlen*, 209 Ariz. 462, 471, 104 P.3d 193, 202 (App. 2005). The amended complaint alleges that Defendants solicited one of Armored Group's customers, the Livonia Police Department, to cancel a purchase order and instead purchase directly from Defendants.

Defendants argue that the amended complaint fails to identify the specific employee at Supreme Corporation or Supreme of Texas who solicited Armored Group's

1  customer. They cite this Court's previous order dismissing the original complaint to
2  support their assertion that Armored Group must identify the specific employee in
3  question. The statement that Defendants quote was made in context of their motion to
4  dismiss for lack of personal jurisdiction; it did not address the level of specificity needed
5  to state a claim for tortious interference. Defendants cite no legal authority indicating that
6  a heightened pleading standard, such as that applicable to claims of fraud, should apply to
7  tortious interference claims. It is enough for Armored Group to allege that an employee
8  or employees of Supreme Corporation or Supreme Corporation of Texas induced
9  cancellation of the purchase order, even if the identity of the employee or employees is
10 not yet certain.

Defendants also contend that the amended complaint alleges nothing more than lawful competition. "[T]here is ordinarily no liability [for tortious interference] absent a showing that defendant's actions were improper as to motive or means." *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 387, 710 P.2d 1025, 1042 (1985), *superseded by statute in other respects*, A.R.S. § 23-1501. According to the Restatement, often cited by Arizona courts on this subject, *see, e.g.*, *id.* at 387–88, "[t]he fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will," Restatement (Second) of Torts § 768 (1979). Furthermore, one of the factors to consider when determining whether interference was improper is "the interests of the other with which the actor's conduct interferes." § 767. The comments provide as follows,

> Usually the actor's interest will be economic, seeking to acquire business for himself. An interest of this type is important and will normally prevail over a similar interest of the other if the actor does not use wrongful means. (See § 768). If the interest of the other has been already consolidated into the binding legal obligation of a contract, however, that interest will normally outweigh the actor's own interest in taking that established right from him.

§ 767 cmt. d; *see also* cmt. c ("[I]nterference would be improper if it involved persuading the third party to commit a breach of an existing contract . . . due in part to the greater

- 8 -

definiteness of the other's expectancy and . . . the lesser social utility of the actor's conduct.").

The amended complaint does not allege whether the Livonia Police Department's purchase order was legally binding or could be canceled. Counsel for Armored Group stated at oral argument that, in fact, the Livonia Police Department could terminate the purchase order at its discretion. Since the purchase order was terminable at will, the solicitation itself evidences nothing more than lawful competition. The solicitation was unlawful only if it was improper "as to motive or means." *Wagenseller*, 147 Ariz. at 387, 710 P.2d at 1042. Nothing in the amended complaint indicates that an improper motive existed or improper means were used. Although Armored Group alleges that Defendants acquired its customer and pricing information by virtue of their business relationship, it does not allege that Armored Group kept its customer or pricing information confidential from Defendants, or that Defendants somehow improperly accessed that information. Armored Group cites no authority that competing for customers using information freely made available by a business associate constitutes an improper means of competition.

The amended complaint also fails to allege that the interference actually caused the breach or termination of any contract. It alleges only that Defendants solicited the Livonia Police Department to cancel a purchase order. (Doc. # 27 ¶¶ 75–77.) It never alleges that the Livonia Police Department actually did cancel the purchase order.

Counsel for Armored Group demonstrated at oral argument that it can allege additional facts to remedy the deficiencies in its tortious interference claim. Leave to amend will therefore be granted.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (doc. # 37) is granted with respect to Count Four of the First Amended Complaint and is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiff is granted leave to amend its complaint at to Count Four by August 21, 2009.

IT IS FURTHER ORDERED that Defendants' motion to transfer venue (doc. # 37) is denied.

DATED this 17th day of August, 2009.

_____
Neil V. Wake
United States District Judge