**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Armored Group, LLC, a Nevada limited liability company,<br><br>       Plaintiff,<br><br>vs.<br><br>Supreme Corporation, a Texas corporation, et al.,<br><br>       Defendants. | CV 09-414-PHX-NVW<br><br>**ORDER** |

Pending before the Court is Plaintiff Armored Group, LLC's (Armored Group) Motion for Sanctions (doc. #76).

**I.  Facts**

The facts giving rise to this dispute are not contested. On November 13, 2009, the Court entered a stipulated protective order that allowed each party to designate certain types of information and documents as "Confidential" or "Confidential–Attorneys Only." Documents could be designated as "Confidential" if they contained "trade secret, proprietary, private, technical, commercial, pricing, financial, or other confidential business information . . . that is not publicly known and cannot be reasonably ascertained from publicly available documents or materials." To obtain "Confidential" treatment, the designated party was required to "indicat[e] on the record the specific testimony or documents that contain Protected Information" or to provide "written notice" of the

confidential materials in a deposition within fifteen business days after the date that the court reporter forwards copies of the transcript to counsel.

On December 2, 2009, Supreme deposed Mr. Pazderka, the Chief Executive Officer of Armored Group. The deposition was not designated as Confidential. The next day, Armored Group's counsel, Colin Campbell, emailed Supreme Corporation's (Supreme) counsel, William Auther, to propose that the parties treat all depositions, in their entirety, as Confidential. On December, 9, 2009, Supreme's counsel agreed. On December 16, 2009, the court reporter sent Supreme's counsel a draft of Mr. Pazderka's deposition. The draft was not marked "Confidential." Mr. Auther downloaded the draft onto his computer, but because the disk sent by the court reporter was not marked "Confidential" and Mr. Auther did not remember the email agreement with opposing counsel, he did not mark the draft copy as "Confidential."

In the meantime, an unrelated dispute arose between Armored Group and Armored Solutions, Inc. (ASI), which was set for arbitration in Arizona. On December 16, 2009, ASI retained Mr. Auther to assist its Massachusetts lead counsel, David Crevier, with the arbitration proceedings in Arizona. On December 21, 2009, Mr. Crevier notified Supreme's arbitration counsel, John Blanchard, of his representation of ASI. Mr. Blanchard voiced no objection to Mr. Auther's representation of ASI based on his representation of Supreme in this litigation.

On January 20, 2010, Mr. Crevier called Mr. Auther to prepare for an initial case conference scheduled by the arbitrator. During that call, Mr. Crevier asked Mr. Auther whether Mr. Pazderka had been deposed in the Supreme litigation and, if so, whether he could get a copy of the transcript. Not seeing "Confidential" on the draft transcript and forgetting the email exchange with Armored Group's counsel, Mr. Auther emailed the draft transcript to Mr. Crevier on January 20, 2010.

At 11:16 a.m. on January 21, 2010, Mr. Crevier emailed Mr. Auther about a telephone conversation he had just finished with Mr. Blanchard about the arbitration

matter. During that conversation, Mr. Crevier had mentioned that he had read Mr. Pazderka's deposition in the Supreme litigation, and Mr. Blanchard objected to his use of the transcript because it was subject to a protective order.

Five minutes later, at 11:21 a.m., Mr. Auther replied to Mr. Crevier's email with instructions not to use or disseminate the draft transcript until he could review the applicable terms of the protective order. At 11:22 a.m., Mr. Crevier replied by email that he had already sent copies of the draft transcript to his clients, Chris and Gail Light, owners of ASI. At 11:24 a.m., Mr. Auther instructed Mr. Crevier to retrieve and destroy all copies of the draft transcript. At 11:30 a.m., Mr. Auther followed up with a telephone call to confirm that Mr. Crevier would retrieve and destroy all copies of the transcript, including notes and summaries. Mr. Crevier agreed. Mr. Crevier, Chris Light, and Gail Light, submitted affidavits confirming that they have destroyed all electronic and hard copies of the transcript, including all notes and summaries.

**II. Analysis**

There are three sources of authority that empower courts to sanction parties or their lawyers for improper conduct: "(1) *Federal Rule of Civil Procedure 11*, which applies to signed writings filed with the court, (2) *28 U.S.C. § 1927*, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2000). Armored Group has not specified pursuant to which source of authority it seeks sanctions, but the first two sources are inapplicable to the circumstances of this case, and therefore the Court will assume that Armored Group seeks sanctions pursuant to the Court's inherent authority. "[B]ad faith is required for inherent power sanctions." *Id.* at 993. Supreme has submitted affidavits to the Court that Mr. Auther did not act in bad faith in disclosing Mr. Pazderka's deposition to unauthorized persons. According to the affidavits, the disclosure was an oversight, not committed with the intention of gaining an unfair advantage in the litigation involving ASI or otherwise. Furthermore, Mr. Auther took

1  immediate steps to remedy the disclosure by contacting Mr. Crevier as soon as he realized
2  his error and asking him to immediately destroy all copies of the deposition and any notes
3  or summaries he had prepared.  Supreme has also submitted affidavits that indicate that
4  Mr. Crevier, Chris Light, and Gail Light, the only unauthorized recipients of the
5  deposition, destroyed all of their copies of the deposition on January 21, 2010, a day after
6  the inappropriate disclosure was made.

7  "Sanctions are available [only] if the court specifically finds bad faith or conduct
8  tantamount to bad faith." *See id.* at 994.  Armored Group admits that Mr. Auther did not
9  act in bad faith, stating that it "accepts [Mr. Auther's] statement that he did not intend to
10 violate this Court's Order." (Doc. #76.)  Armored Group further states that it has "no
11 reason to doubt counsel for Defendant's explanation for why or how they violated the
12 Protective Order."  However, Armored Group argues that the disclosure prejudiced it, and
13 that "innocent mistake or not," the protective order must have some consequence.

14 Armored Group has not stated, however, *how* it was harmed.  It argues only that
15 ASI is a fierce competitor of Armored Group, and that Mr. Pazderka testified at length
16 about the inner workings of his business, information that he did not want his competitors
17 to have.  However, Armored Group does not point to any specific information in the
18 deposition that it did not want disseminated.  In contrast, Supreme submitted affidavits
19 from Chris Light and Gail Light to the effect that they did not notice anything that was a
20 trade secret in the transcript and that there was nothing in the pages they read that they
21 believed would be helpful to them as competitors of Armored Group or Supreme.  Mr.
22 Crevier has also stated, via affidavit, that the only fact that he learned from the transcript
23 was that Mr. Pazderka has a relationship with a company called Executive Armor.  Mr.
24 Crevier asserts that he would have learned of the existence of Executive Armor anyways
25 because he intended to inquire about all relationships with manufacturers that Armored
26 Group had during the time it was operating under an agreement to use best efforts on

1  behalf of ASI. Thus, Armored Group has not shown how it was prejudiced by the
2  disclosure.
3  Without more, sanctions against Supreme are not warranted. In the first place,
4  three of the sanctions sought by Armored Group are unnecessary. All copies of the
5  deposition transcript that were shared with unauthorized parties have been destroyed.
6  Supreme has already identified all recipients of the transcripts. And, the destruction of
7  the deposition transcripts has been certified by affidavit.
8  Armored Group also seeks that the Court order that Mr. Auther be removed as
9  local counsel in the ASI litigation. Counsel for Armored Group did not initially object to
10 Mr. Auther's representation as local counsel in the ASI arbitration. Mr. Auther has
11 already indicated that the sharing of Mr. Pazderka's deposition was done inadvertently
12 and without bad faith. The risk that confidential information will be shared in the future
13 is therefore low. The Court will not order Mr. Auther be removed as local counsel in the
14 ASI litigation.
15 Finally, Armored Group seeks attorneys' fees and monetary sanctions. As
16 explained, these sanctions can only be imposed if there has been bad faith conduct, which
17 is not present here. Armored Group's request for fees and monetary sanctions is therefore
18 denied.
19 IT IS THEREFORE ORDERED that Plaintiff Armored Group's Motion for
20 Sanctions (doc. #76) is Denied.
21 DATED this 22nd day of February, 2010.

_____
Neil V. Wake
United States District Judge

- 5 -