William F. Auther (Bar No. 014317)
Abram N. Bowman (Bar No. 023112)
Corey I. Richter (Bar No. 024239)
**BOWMAN AND BROOKE LLP**
2901 North Central Avenue
Suite 1600, Phoenix Plaza
Phoenix, Arizona 85012-2761
Telephone:    (602) 643-2300
Fax:               (602) 248-0947
Minute Entries: mme@phx.bowmanandbrooke.com
Attorneys for Defendants Supreme Corporation
and Supreme Corporation of Texas

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| THE ARMORED GROUP, LLC., a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>Supreme Corporation, a Texas corporation; and Supreme Corporation of Texas, a Texas corporation,<br><br>Defendants. | No. CV 09-00414-PHX-NVW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT MICHAEL A. FAHLMAN'S LOST PROFITS DAMAGES TESTIMONY**<br><br>**(Oral Argument Requested)** |

Defendants Supreme Corporation and Supreme Corporation of Texas (collectively "Supreme") respectfully submit this reply in support of their motion pursuant to Rule 702 Federal Rules of Evidence, to exclude the opinion testimony of Plaintiff's (hereinafter "TAG") expert, Michael A. Fahlman ("Fahlman") on Plaintiff's alleged "lost profits damages."

Fahlman's opinions should be excluded because TAG has not met ***its burden*** to prove that Fahlman's damages testimony meets Daubert and Rule 702 standards for admissibility. Fahlman failed to review and consider critical factual information in each step of his analysis. Of significance, Fahlman completely ignored the testimony of a key State Department witness when rendering his lost gross revenue opinion. Also, instead of examining TAG's financial documents, Fahlman exclusively relied on conversations with TAG's owner in rendering his avoided costs opinion. Such omissions wholly undermine the reliability of Fahlman's opinions.

Moreover, TAG's attempt to limit the Court's analysis of Fahlman's opinions by drawing sharp distinctions between his underlying factual bases, methodology, and ultimate conclusions is meritless because Fahlman's flawed conclusions are evidence of his flawed methodology. See generally General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997); see also generally Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996).

As set forth in the underlying motion and discussed below, Fahlman's opinion testimony is based on insufficient facts and data, is based on an inadequate methodology, and produces unreliable conclusions that do not fit the facts of this case and the realities of the contract between Supreme of Texas and the State Department. For these reasons, his opinions should be excluded.

**I.   AS A PRELIMINARY MATTER, THE COURT SHOULD NOT HESITATE TO EXERCISE ITS MANDATORY GATEKEEPING FUNCTION AND EXCLUDE FAHLMAN'S NET LOST PROFITS OPINIONS BECAUSE TAG HAS NOT MET ITS BURDEN TO PROVE THAT THE OPINIONS ARE RELIABLE.**

The party proffering expert opinion evidence bears the burden of proving that the expert's methodology was proper and properly applied. See Lust v. Merrell Dow Pharms., Inc., 89 F.3d 594, 598 (9th Cir. 1996). The Comment to Rule 702 further explains:

> Consistently with Kumho, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, ***the proponent*** has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171 (1987).

(Emphasis added). There is no dispute that TAG bears the burden to establish that Fahlman's opinion testimony is admissible under Rule 702.

However, in TAG's Response to Supreme's Motion, TAG fails to account for and meet its burden to establish the admissibility of Fahlman's opinion testimony. Instead, TAG relies on vague, conclusory, and self-serving assertions about Fahlman's "rigorous analysis" and the page-count of his document review. TAG also incorrectly argues that Supreme's motion only raises an issue with his conclusions, not his methodology. Such assertions are insufficient to defeat TAG's motion.

TAG further attempts to short-circuit the Court's analysis of the admissibility of

1   Fahlman's opinions by suggesting that Rule 702 and Daubert admit any expert opinion
2   testimony where the reliability is anything short of "wholly unreliable."[1]  TAG's argument
3   for abolishment of the Court's gatekeeping function is contradicted by the express power
4   granted the Court's by Rule 702 and the weight of cases on the subject of the admissibility
5   of expert opinion testimony.  While a district court's decision to admit or exclude proffered
6   expert testimony is given broad deference under the abuse-of-discretion standard, a district
7   court has no discretion on whether to perform its mandatory gatekeeping function.  See
8   General Elec. Co. v. Joiner, 522 U.S. 136, 143, 148 (Breyer, J., *concurring*) ("neither the
9   difficulty of the task nor any comparative lack of expertise can excuse the judge from
10  exercising the 'gatekeeping' duties that the Federal Rules impose . . . To the contrary, when
11  law and science intersect, those duties often must be exercised with care."); see also Kumho
12  Tire, 526 U.S. at 158-159 (Scalia, J., *concurring*) (while the district courts have discretion in
13  choosing the manner of testing the admissibility of expert testimony, "it is not discretion to
14  perform that function inadequately.").

15      The Supreme Court is clear that judges must undertake this gate-keeping obligation
16  with diligence, even though it "will sometimes ask judges to make subtle and sophisticated
17  determinations about scientific methodology and its relation to the conclusions an expert
18  witness seeks to offer."  General Electric Co. v. Joiner, 522 U.S. 136, 147 (Breyer, J.,
19  *concurring*).  The Eleventh Circuit explained why the Court's exercise of its gatekeeping
20  discretion is so important:

> While meticulous Daubert inquires may bring judges under criticism for donning white coats and making determinations that are outside their field of expertise, the Supreme Court has obviously deemed this less objectionable than dumping a barrage of questionable scientific evidence on a jury, who would likely be even less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique.

Allison v. McGhan Med. Corp., 184 F.3d 1300, 1310 (11th Cir. 1999).

---

[1] TAG cites unpublished decisions in violation of Ninth Circuit Rule 36-3.

Consequently, the Court should not hesitate to exercise its mandatory gate-keeping function by excluding Fahlman's unreliable opinions.

## II. TAG FAILED TO PROVE THAT *EACH STEP* IN FAHLMAN'S NET LOST PROFITS ANALYSIS IS RELIABLE.

It is undisputed that lost profits damages are limited to net lost profits. As set forth in Supreme's underlying motion, the calculation of net lost profits involves: (1) calculating lost gross revenue; (2) calculating avoided costs, and (3) subtracting avoided costs from lost gross revenue. See Revised Arizona Jury Instructions (Civil) 4th Ed., Contract 19; see also AICPA Practice Aid 06-4, Calculating Lost Profits (2006), at p. 3, pertinent portions attached as Exhibit C to Supreme's underlying motion; see also Expert Report of Michael A. Fahlman (May 14, 2010) at p. 23, pertinent portions attached as Exhibit B to Supreme's underlying motion.

Contrary to TAG's argument for an elevated "wholly unreliable" standard, the Court must find that each step in Fahlman's methodology is reliable. Applying Daubert, courts have held that "any step that render the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." Mitchell v. Gencorp. Inc., 165 F.3d 778, 782 (10th Cir. 1999) (quoting In Re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995)). The Third Circuit in In Re Paoli observed:

> [T]he requirement of reliability, or "good grounds," extends to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case.

In re Paoli, 35 F.3d 717, 743. TAG, however, failed to show that each step in Fahlman's lost profits analysis is reliable.

### A. Fahlman's Opinions are Not Based on Sufficient Facts and Data.

Expert opinions must be based on a reliable foundation, including accurate ***and relevant facts***, in order to be admissible. Fahlman's opinions on lost gross revenue and avoided costs, and therefore his ultimate net lost profits opinions, are all based on an inadequate factual basis.

1. **Fahlman Did Not Consider the Highly Relevant Testimony of a Key State Department Witness in Rendering His Lost Gross Revenue Opinion.**

In analyzing lost gross revenue related to Supreme of Texas' sales to the State Department, Fahlman failed to review the deposition of Ricky Motley, the State Department's Contracting Officer's Representative who set the contract maximum and issued the orders under the relevant State Department contract. See Deposition of Ricky Motley (July 16, 2010) at pp. 144, 161-62, 227-31, 279-80, pertinent portions attached as Exhibit E to Supreme's underlying motion. In fact, Fahlman admits that he did not speak to *anyone* at the State Department or review any testimony of State Department witnesses in this case. See Deposition of Michael A. Fahlman (September 20, 2010) at p. 94, pertinent portions attached as Exhibit A to Supreme's underlying motion.

In its response, TAG attempts to minimize the importance of Mr. Motley's deposition testimony by characterizing it as "a single State Department employee's general guess as to the amount of orders he expected." TAG's Response at p. 9. TAG, however, cannot simply disregard the significance of Mr. Motley's testimony when such testimony provides key factual information regarding how the State Department calculated the maximum value of the contract, the State Department's expectations in awarding the indefinite quantity contract to Supreme, as well as their estimation of the contract's value after 3/5 of the contract term (assuming the State Department picks up *all* option years). Moreover, **TAG**, not Supreme, requested and noticed Mr. Motley's deposition. Thus, Mr. Motley is not a State Department employee randomly selected by Supreme for purposes of the underlying motion. Rather, Mr. Motley is a critical witness whose testimony is directly relevant to any damage analysis. Fahlman's failure to consider or explain such testimony in his analysis severely undermines the reliability of his opinions.

Furthermore, TAG's mere reference to the tonnage of irrelevant documents reviewed by Fahlman before settling on a single statistic for a growth rate figure does not excuse Fahlman's failure to consider Mr. Motley's testimony. In its response, TAG points to the

schedules of data and information apparently reviewed by Fahlman in settling on a compounded 22.7% growth rate. Although Fahlman's growth rate analysis may have involved reviewing "reams" of paperwork, the growth rate applied is simply based on a single statistic – the growth rate for the *total* number of armored vehicles purchased by the State Department *from all sources* for the five (5) years prior to Supreme of Texas' contract with the State Department (2003 through 2007). See Exhibit A to Supreme's underlying motion at pp. 86-93; see also Exhibit B to Supreme's underlying motion at Schedules 7 and 9 (Schedule 9 indicating a 22.7% 5-year (FY03-FY07) Average Annual Growth Prior to Contract for "State Department - Armored Vehicles"). Consequently, although Fahlman may have reviewed numerous documents in rendering his opinions, such efforts are meaningless if Fahlman fails to consider the most basic and critical evidence bearing on the issue.

Fahlman's lost gross revenue opinion is not based on sufficient and relevant facts and data. Accordingly, the Court should exclude his opinions on this basis alone.

### 2. Fahlman Exclusively Relied on the Self-Serving Information Provided by TAG's Owner in Rendering His Avoided Costs Opinion.

Fahlman's net lost profits opinions are also unreliable and inadmissible under Rule 702 because he has not considered sufficient facts and data to evaluate the amount of avoided costs that he must deduct. See Concord Boat Corp., 207 F.3d at 1057 (finding error in admission of economist's opinion that "did not incorporate all aspects of economic reality").

Fahlman concluded from conversations with TAG's owner that TAG had no avoided costs to subtract from the lost gross revenue estimate.[2]  See Exhibit A to Supreme's underlying motion at pp. 162-64, 179. In addition to the self-serving information apparently offered by TAG's owner, TAG's response now vaguely references "certain Armored Group

---

[2] Although TAG asserts that freight charges were subtracted from Fahlman's gross lost revenue analysis, Supreme of Texas, not TAG, bore the responsibility to pay freight charges. Fahlman did not deduct freight charges *as an avoided cost to TAG*.

documents" as part of Fahlman's avoided costs "analysis." However, TAG's mysterious reference to "certain Armored Group documents" reviewed by Fahlman does not excuse the facts and information that he did not gather, review or consider – ***Fahlman admitted that in his task of assessing avoided costs in his calculation of net lost profits, he did not review or have any information on the following:***

    a.   TAG's tax returns;
    b.   TAG's profit and loss statements;
    c.   TAG's balance sheets;
    d.   TAG's income statements;
    e.   *Any* of TAG's financial documents;[3]
    f.   TAG's product mix;
    g.   TAG's current or former customer mix;
    h.   TAG's employee numbers;
    i.   TAG's sales figures;
    j.   TAG's profit margins;
    k.   TAG's cost structure;
    l.   TAG's accounting practices;
    m.   Mr. Pazderka's compensation level and structure;
    n.   TAG's bonus practices;[4] or
    o.   Whether TAG has been profitable for any given year, including 2006-2008.

See Exhibit A to Supreme's underlying motion at pp. 59, 66, 69-72, 125-27, 197-98, 200-05, 208-13.

---

[3] Supreme has attempted several times to obtain TAG's relevant financial information, including serving Requests for Production of Documents on September 14, 2009, a 30(b)(2) Request for Documents on June 16, 2010, and a subpoena served on TAG's accountant, Steven J. Dabrowski on July 16, 2010. To date, TAG has not produced the requested financial information. Between July 16, 2010 and the time of filing this motion, TAG has delayed providing the requested financial information despite numerous follow-up attempts by counsel for Supreme.

[4] In its response, TAG's argument that "any suggestion that Armored Group's obligations to pay commissions to its employees are 'avoided costs' is nonsense." Assuming for the sake of argument that a TAG employee was entitled to a commission on TAG's alleged commissions for Supreme's sales to the State Department, TAG provides no explanation for why that obligation to pay a commission to its employee would not be an avoided cost.

Instead of analyzing TAG's financial information, Fahlman inappropriately relies on his discussions with TAG's owner, for which he has no notes or documentation. Fahlman's reliance on such unverified statements provided to him by TAG's owner further undermines the reliability of his opinions. See Faries v. Atlas Truck Body Mfg. Co., 797 F.2d 619, 623-24 (8th Cir. 1986); United States v. Marine Shale Processors, Inc., 81 F.3d 1361, 1370 (5th Cir. 1996) ("[A] district court may decide that the financial and other incentives in litigation pose an unacceptable risk to the objectivity and neutrality of the person gathering the data, such that the data would not normally be considered reliable in the relevant field"); In re Agent Orange Prod. Liab. Lit., 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985) (excluding expert testimony based in part on self-serving and unverified checklists filled out by plaintiffs). This is simply not the rigor that an accountant or economist would use in their day-to-day practice to evaluate a business's costs, and consequently, Fahlmans' opinions must be excluded.[5]

**B.      Notwithstanding the Insufficient Facts and Data Underlying Fahlman's Net Lost Profits Opinions, His Opinions Must Also be Excluded Because They are Not the Product of a Reliable Methodology and Have Not Been Reliably Applied to the Facts of This Case.**

The Court in Daubert held that Rule 702 implicitly required that proffered expert testimony be: (1) derived from a reliable methodology; and (2) "fit" the issues to be decided at trial. 509 U.S. at 591-593 (footnotes omitted). While TAG argues that the Court must focus solely on Fahlman's principles and methodology, and not on the conclusions he has generated in this case, the United States Supreme Court has recognized that "***conclusions***

---

[5] Interestingly, although TAG and Fahlman admit that the proper measure of damages in this case is net lost profits, TAG misapplies case law on "procuring cause" liability to somehow support the notion that the measure of damages in this case is simply the "amount of commission agreed upon." See TAG's Response at p. 10; see also Exhibit B to Supreme's underlying motion, p. 23. Although Fahlman claims that he is conducting a net lost profits calculation (for which he concludes there are no costs to subtract), TAG lifts the curtain to reveal the true damages analysis applied, namely gross lost revenue or "amount of commission" damages. Fahlman's failure to investigate avoided costs may be explained by TAG's incorrect suggestion that avoided costs should not be deducted in this case.

*and methodology are not entirely distinct from one another*." General Elec. Co., 522 U.S. at 146; see also Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996). As explained in In Re Paoli, the sharp distinction argued for by TAG has "limited practical import" explaining:

> When a judge disagrees with the conclusions of an expert, it will generally be because he or she thinks that there is a mistake at some step in the investigative or reasoning process of that expert. If the judge thinks that the conclusions of some other expert are correct, it will likely be because the judge thinks that the methodology and reasoning process of the other expert are superior to those of the first expert. This is especially true given that the expert's view that a particular conclusion "fits" a particular case must itself constitute scientific knowledge — *a challenge to "fit" is very close to a challenge to the expert's ultimate conclusion about the particular case, and yet it is part of the judge's admissibility calculus under Daubert*.

In re Paoli, 35 F.3d 717, 746 (emphasis added). The Court must examine Fahlman's conclusions in order to determine whether they could reliably follow from the facts and the methodology used. Heller v. Shaw Industries, Inc., 167 F.3d 146, 153 (3d Cir. 1999).

Fahlman's net lost profits methodology produced an estimate of gross lost revenue that exceeds the *maximum* contract amount by more than $13 million, and exceeds the duration of the contract by *at least* a year. See Exhibit A to Supreme's underlying motion at pp. 100-01, 107, 113. Fahlman's conclusion that the underlying 5-year contract with a maximum value of $98 million will result in more than $111 million dollars in armored vehicle sales over 6 years is proof of his flawed methodology and unreliable application of the known facts to his net lost profits analysis.[6]

TAG's response incorrectly asserts that Fahlman's analysis "leads to a total amount of only $85 million" under the 5-year vendor contract, and even accuses Supreme of a lack of intellectual rigor in asserting that Fahlman's gross lost revenue opinion is based on an estimation of $111 million in sales on a $98 million contract. However, Fahlman does not limit his gross lost revenue estimate to $85 million in orders over 5 years on the underlying contract between Supreme of Texas and the State Department. Rather, he opines that the

---

[6] Notably, Fahlman relies again on Mr. Pazderka's self-serving opinion on whether the State Department might extend a contract (he is not a party to the contract), but refuses to consider the State Department witnesses' sworn testimony concerning their expectations for the value of the underlying contract.

contract will be extended for a 6th year and that Supreme will sell an additional $26 million in armored vehicles under the contract. Fahlman's opinions are directly contradicted by the known facts and realities of the underlying contract between Supreme of Texas and TAG. Fahlman's opinions should be excluded because they are simply not supported by the facts of this case.

### III. CONCLUSION

For any and all of the foregoing reasons and those set forth in the underlying motion, Michael A. Fahlman's opinions on lost profits damages are speculative, not based on sufficient facts and data, the product of a flawed methodology, do not fit the known facts of the case, and should be precluded under Federal Rule of Evidence 702.

DATED this 10th day of November, 2010.

BOWMAN AND BROOKE LLP

By: s/ Abram N. Bowman
William F. Auther, Esq.
Abram N. Bowman, Esq.
Corey I. Richter, Esq.
2901 North Central Avenue
Suite 1600, Phoenix Plaza
Phoenix, Arizona 85012-2736
Attorneys for Defendants Supreme Corporation
and Supreme Corporation of Texas

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

>Colin F. Campbell, Esq.
>John L. Blanchard, Esq.
>Sharad H. Desai, Esq.
>Osborn Maledon, P.A.
>2929 N. Central Avenue, Suite 2100
>Phoenix, Arizona 85012-2793
>Attorney for Plaintiffs

I further certify that on this 10th day of November, 2010, I arranged for a copy to be hand-delivered to Judge Neil V. Wake the next business day, November 12th, 2010, as follows:

>Honorable Neil V. Wake
>United States District Court
>Sandra Day O'Connor U.S. Courthouse, Suite 524
>401 West Washington Street, SPC 52
>Phoenix, Arizona 85003

s/ Joan E. Paskas